## ITHIEL BATTLE *versus* NATHANIEL GRIFFIN.

Where a mortgagee, upon a demand to render an account of the sum due on the mortgage, said he had no other account to render, than one which had been rendered two years before, and it appeared that that account was erroneous, it was *held*, that there was a sufficient demand and refusal to account, to sustain a bill in equity to redeem under *St.* 1821, *c.* 85.

Where the grantee of land, under a deed with warranty, was evicted, and the grantor, in discharge of his covenants, gave the grantee promissory notes, secured by a mortgage, to the value of the land at the time of the eviction, it was *held*, on a bill to redeem, that there was nothing contrary to equity in such settlement, whatever might have been the rule of law at the time, determining the measure of damages in cases of eviction.

*Held,* also, that a judicial decision, fixing a measure of damages in such cases, will not impair previous agreements founded on a different measure of damages.

THIS was a bill in equity to redeem a tract of land in Tyringham, mortgaged by the plaintiff to the defendant on the 24th of July, 1802, as security for the payment of several sums of money, amounting to 4500 dollars, by the 1st of January, 1806, with interest annually, agreeably to five promissory notes, bearing even date with the deed of mortgage. The plaintiff sets forth several payments made between January 27, 1806, and May 29, 1822, for which he has vouchers ; also a payment of 92 dollars 43 cents by the hands of one Cowden, and fifty dollars by the hands of one Porter, for which he has no vouchers ; he further alleges, that he gave to the defendant, in January 1806, his note for 25 dollars with interest, and in February 1809, his note for 192 dollars 40 cents with interest ; that on the 20th of January, 1823, the plaintiff and J. M. Battle gave their two joint and several promissory notes to the defendant, one for 700 dollars, the other for 147 dollars 41 cents, which last note was paid before the commencement of this suit ; that these two last notes included the two notes of January 1806, and February 1809, computing compound interest from the dates to January 20, 1823 ; that the remainder of the sum of 847 dollars 41 cents (the amount of the two notes last given) was by agreement to be applied on the notes secured by the mortgage : — and further, that the defendant in consideration that the plaintiff would prosecute two actions of trespass and

ejectment, which had been commenced by the defendant in the State of New York, of *Jackson ex dem. Bond et al.* v. *C. Root* and *S. Root*,* and in which the present plaintiff and defendant were interested as Jackson's lessors, agreed with the plaintiff that he would account with him for all his expenses and disbursements in prosecuting the actions, and would apply the amount on the notes and mortgage before mentioned ; that the plaintiff accordingly did prosecute the actions to final judgment, and his expenses and disbursements amounted to 500 dollars, and that sum ought to be applied as a payment on the notes and mortgage : — and further, that the notes and mortgage were given under the circumstances, and for the consideration following, viz. about four years before the date of the mortgage, the plaintiff, by his deed of war-ranty, conveyed to the defendant a lot of land in Pompey, in the State of New York, for four dollars an acre ; the quantity of land sold was supposed by the plaintiff to contain 500 acres, and no more, which was well known to the defendant, and if a larger quantity was conveyed, it was unknown to the plaintiff, and was contrary to the agreement and understanding of the parties at the time ; the plaintiff's title to the lot after-wards failed, and the defendant was in consequence evicted from the land in 1802 ; the defendant then demanded of the plaintiff 5000 dollars for damages sustained by reason of the eviction, and falsely and fraudulently represented that the plaintiff was liable to pay him that amount of damages, and by reason of such representation, and of the distressed and em-barrassed situation in which the plaintiff was placed by the demand, and to prevent a suit with which he was threatened by the defendant, he was induced to execute and deliver to the defendant the notes and mortgage before mentioned, and also another note for 500 dollars ; in computing the damages, the defendant estimated the land as containing 540 acres ; the defendant demanded 500 dollars for the payment of the costs of the action whereby he was evicted, and in pursuance of this last demand the plaintiff gave his promissory note last mentioned for 500 dollars, which note has been paid ; by the

Battle
*v.*
Griffin.

* See 18 Johns. R. 60

laws of New York, the plaintiff was not liable to pay the defendant any damages for the failure of the title, besides the consideration paid by the defendant for the land, and the interest thereon from the date of the plaintiff's deed to the time of the eviction of the defendant, and the taxed costs of the suit by which the land was recovered from him ; all which, at the date of the mortgage, amounted to no more than 3026 dollars, and deducting therefrom the amount of the note for 500 dollars, which has been paid, the balance is 2526 dollars, and the excess included in the mortgage, and the notes therein mentioned, above the last sum, being 1974 dollars, was so included for the reasons before stated, and for forbearing and giving day of payment of the balance justly due, from the date of the mortgage until the several times when the notes therein mentioned should fall due ; and the mortgage and notes are unjust, usurious, oppressive, and corrupt, and void in law : — and further, that on the 20th of February, 1823, at Tyringham, the plaintiff, being unable to pay the sums claimed by the defendant, for the purpose of procuring forbearance and delay, was induced by the defendant, to enter into an agreement under seal with the defendant, by which it was mutually agreed that the sum of 5000 dollars was then due on the mortgage and notes, and by which the plaintiff covenanted to pay the annual interest on that sum ; and that for the same reason, he was induced at the same time to make the two notes before mentioned for 700 dollars, and 147 dollars 41 cents, with J. M. Battle as his surety ; whereas, in truth, nothing was then due on the mortgage : — and further, that on the 7th of February, 1825, the plaintiff requested the defendant truly to state his account of the sum due on the mortgage, but the defendant has neglected to do so ; and that the plaintiff is ready to pay such sum as the Court shall find to be due on the notes and mortgage : — and he prays that the whole account between the parties may be opened, and that the Court would order the defendant to discharge the mortgage, and reconvey the mortgaged premises, and repay the sum overpaid as alleged in the bill.

The defendant filed an answer, in which he states that the plaintiff, on the 10th of January, 1797, by his deed of war-

ranty, conveyed to the defendant lot No. 41 in Pompey, except 110 acres in the northwest corner of the lot, for 2000 dollars, the quantity purchased being between 540 and 550 acres ; that the conveyance was not in its terms limited to 500 acres, and that those terms were the only understanding and agreement of the parties in fact, and are conclusive on the parties both in law and in equity ; that the defendant entered immediately after the purchase, and sold 70 acres to one Crocker and 130 acres to one Howard, for four dollars an acre, and that the defendant and his grantees made great improvements on the land ; that afterwards suits in ejectment were brought by John Fisher and James B. Clark against Crocker, Howard, and one Meeker, tenant of the defendant, of which the defendant immediately gave notice to the plaintiff, who appeared at the trials of the suits and directed the defences, — which however failed, and the defendants were evicted ; that it not being convenient for the plaintiff to furnish funds for the necessary disbursements, the defendant, at his instance and in his behalf, advanced 600 or 700 dollars ; that after the eviction the plaintiff made overtures to Fisher and Clark to purchase their title, which they agreed to sell at the rate of nine dollars an acre, but on a credit shorter than the plaintiff could accede to, whereupon he agreed to allow the defendant, in compensation for his damage from the eviction, nine dollars an acre, but on a more extended credit ; that accordingly, on the 24th of July, 1802, the plaintiff, for the sole consideration of the defendant's loss of the purchase by the failure of the plaintiff's title, gave the notes for 4500 dollars, secured by the mortgage, which amount is less than the value of the land at nine dollars an acre ; that in 1802 the defendant, in consequence of the failure of title, paid Crocker 750 dollars for his loss of 70 acres, and Howard 1200 dollars for his loss of 130 acres ; that the plaintiff executed the notes and mortgage in compromise of the defendant's damages, and on reflection, and with the aid and advice of his own counsel, without any fraudulent representation or compulsion on the part of the defendant ; that in regard to the laws of New York, by which a claim for damages from a breach of the covenants of warranty and against incumbrances

is limited to the amount of the consideration paid and interest, &c., the defendant deliberately adopted a different rule, by which the damages were estimated at the value of the land at the time of the eviction, — which was conformable to the rule practised on in this commonwealth, within whose jurisdiction the parties then were, and where only the defendant could pursue his remedy for a breach of those personal covenants, the plaintiff having then, and always before, resided in this commonwealth ; that the note for 500 dollars constituted no part of the debt secured by the mortgage, but was given for a distinct consideration, namely, for the disbursements of the defendant in the suits of Fisher and Clark, which exceeded the amount of the note by one or two hundred dollars, and that it was just that the plaintiff should pay the sum mentioned in the note, which was a transaction of compromise entered into without any improper conduct on the part of the defendant ; that the mortgage and notes mentioned originated as above stated, free from usury, and on legal and equitable grounds , that the payments alleged by the plaintiff to have been made on the notes for 4500 dollars, between January 27, 1806, and May 29, 1822, were so made and have been so applied ; that the defendant does not recollect, and does not believe, that any payment was ever made him by Cowden or Porter on account of the plaintiff ; that the note for 192 dollars 50 cents was given for one half, or less than one half, of the value of the excess of the land purchased over 500 acres, and the note for 25 dollars was given for money lent, and that in extinguishing them by two other notes for 700 dollars and 147 dollars 41 cents, made January 20, 1823, the last of which has been paid, interest was computed conformably to the stipulation in the cancelled notes or resting in the understanding of the parties, which stipulation was agreeable to law and equity, and that the two new notes, except for the amount of the cancelled notes, have been applied on the mortgage note ; that as to the plaintiff's claim for reimbursement of his expenses, viz. for 500 dollars, in the actions of ejectment brought in 1817 to try the title of Fisher and Clark, the defendant hoping to invalidate their title, which would relieve the plaintiff from his debt, and the plaintiff expressing a willing-

ness to defray the whole expense, but declaring that he did not feel able to do it, the defendant voluntarily assumed the expense of the litigation, on condition that the plaintiff would faithfully attend to the cause, and would charge for his disbursements only, and not for time expended; that afterwards, at the settlement in 1823, the plaintiff freely remitted all claim on that behalf, being no doubt moved thereto by divers equitable considerations, such as that he was most interested in the event of the litigation, that the defendant had expended therein nearly 800 dollars, and that probably the defendant would never have bargained with him, had he not concealed from the defendant his knowledge of the adverse claim of Fisher and Clark; that as to the sealed instrument of February 20, 1823, on a computation and settlement of all demands between the parties, there was found to be due from the plaintiff the sum of 5847 dollars 41 cents, and it was agreed that two notes should be given, with surety, for 847 dollars 41 cents, and that the residue only, viz. 5000 dollars, should stand chargeable on the mortgaged premises, as on the highest estimate the value would not exceed that sum, and therefore, and for no other reason, was the sealed instrument made, limiting the sum due on the mortgage to 5000 dollars, and containing a stipulation for annual interest, which was the sole consideration for forbearance and giving day of payment of that sum, and no more than legal interest was secured or taken unless by mistake; and finally, that the defendant never neglected or refused to make a true statement of the sum due on the mortgage when thereto requested by the plaintiff.

At the trial, before *Wilde* J., the plaintiff, to show that he was entitled to maintain this suit without a previous tender of the money due on the mortgage, called several witnesses, who testified that on the day before the commencement of the suit he made a demand of the defendant, who is an inhabitant of the State of New York, but was then in this county, that he would state a true and just account of the money due on the mortgage, and that the defendant answered that he had no other account to render than the one which had been rendered in 1823, and which was in the case. The parties were then together for the purpose of settling the amount due on the

mortgage, and the plaintiff claimed an allowance of 92 dollars 40 cents and of 50 dollars, which he said were paid on the mortgage, the first sum by Cowden, the other by Porter. It was also proved, that the defendant then declared that he could not say whether these sums ought to be allowed, or whether there was a mistake in the account of 1823, until he could see his son, who made out that account, and who also lived in the State of New York. The witnesses differed on the question whether this remark was made before or after the demand to render an account. Evidence was introduced showing that such payments were made on account of the mortgage. The plaintiff claimed also an allowance of the note for 192 dollars 40 cents, of the note for 25 dollars, and of part of 500 dollars paid for expenses in defending the suits in New York, the costs taxed for the plaintiff being only 250 dollars 92 cents ; and evidence was introduced, on each side in relation to these claims and to various allegations in the bill and answer.

*Sept. 20th*

*Porter*, for the plaintiff, contended that there was a sufficient demand and refusal to render an account, to sustain a bill to redeem. *Willard* v. *Fiske*, 2 Pick. 540 ; St. 1821, c. 85, § 1.

The consideration of the notes secured by the mortgage may be inquired into ; 4 Johns. R. 296 ; 7 Johns. R. 26, 383 ; 8 Johns. R. 120 ; 10 Johns. R. 224 ; 17 Johns. R. 301 ; 9 Mass. R. 254 ; 1 Str. 674 ; 2 T. R. 71 ; 7 T. R. 121, 348 and note ; 5 T. R. 6 ; and if the promisor shows that they were given for more than the amount due, the promisee will recover to that amount only. 1 Esp. R. 261 ; Peake's R. 61, 216 ; 6 East, 110 ; 2 Caines's R. 248 ; 7 Johns. R. 361, 384 ; 13 Johns. R. 52 ; 15 Johns. R. 44. For the breach of the covenants in the deed conveying the land in New York, it is apprehended that the measure of damages, according to our own law, notwithstanding the cases of *Gore* v. *Brazier*, 3 Mass. R. 523, and *Bigelow* v. *Jones*, 4 Mass. R. 512, was the consideration paid, with interest to the time of the eviction, and the expenses of defending the actions of ejectment ; for the land being wild, the seisin followed the title, (8 Johns. R. 269 ; 14

Johns. R. 406 ; 3 Mass. R. 219,) and the plaintiff's cove- <span style="float:right">Battle<br>*v.*<br>Griffin</span>
nant of seisin was broken immediately.   2 Mass. R. 433,
455 ; 4 Mass. R. 108 ; 8 Mass. R. 243 ; 10 Mass. R. 459 ;
and particularly *Sumner* v. *Williams,* 8 Mass. R. 221.   But
if this position is untenable, we say the contract is to be
governed by the laws of New York, where the land lies, and
where the deed was executed and was to be performed ; 1
Bos. & Pul. 141 ; 2 Mass. R. 84, and many other cases ;
and in New York it is well settled that the measure of dama-
ges is the one above stated.   3 Caines's R. 111 ; 4 Johns.
R. 1 ; 13 Johns. R. 50.   The plaintiff omitted to mention
to the defendant the claim of Fisher and Clark, not with a
fraudulent design, but because upon the advice of counsel he
thought it of no validity.   Such concealment would not sus-
tain an action of deceit; 10 Mass. R. 197 ; Com. Dig.
*Action on the Case for a Deceit, A,* 8, cited in 4 Johns. R.
12 ; but even if it were fraudulent, it would not alter the rule
of damages.   13 Johns. R. 395.   Neither is the measure of
damages affected by the payments made by the defendant to
his grantees, Howard and Crocker, upon their eviction.   8
Mass. R. 243.   The notes then, so far as they go beyond
he consideration of the deed with interest and costs of the
. ction of ejectment, are without consideration ; for in regard
to that excess the plaintiff derived no benefit, and nothing was
yielded to the disadvantage of the defendant.   5 Cranch,
142 ; 11 Mass. R. 111 ; 1 Saund. 211, *in notis.*   The plain-
tiff, no doubt, signed the notes under an impression that he
was liable to pay the defendant the value of the land at the
time of the eviction, and the defendant will rely on the
maxim, *ignorantia juris non excusat.*   But it is apprehended
that that rule does not apply in civil cases, in such a manner
as to enable a promisee to make an acquisition by the mere <span style="float:right">14</span>
force of a contract, when nothing is due from the promisor in
law, equity, honor, or conscience.   On this subject Porter
cited and commented at much length on the following au-
thorities ; — Eden on Injunctions, 7 *et seq.* ; Moseley, 364 ;
3 P Wms. 316 ; 2 Atk. 112, 591 ; *Harman* v. *Camm,* 4
Vin. Abr. 387 ; 10 Ves. 406 ; 2 East, 469 ; 1 Campb.
134 ; 5 Taunt. 144 ; *Lowry* v. *Bourdieu,* 2 Doug. 471 ;

3 Maule & Selw. 378 ; 12 East, 38 ; 7 East, 231 ; 5 Burr. 2670 ; 1 T. R. 712 ; 2 W. Bl. 824 ; *Ancher* v. *Bank of England*, 2 Doug. 638 ; 1 T. R. 285 ; *Chatfield* v. *Paxton*, Chitty on Bills, (5th ed.) 304, note *c.* ; 14 East, 440 ; 4 Mass. R. 342 ; 7 Mass. R. 449, 483 ; 9 Mass. R. 55, 408 ; 1 Binney, 37 ; Dig. *lib.* 22, *tit.* 6 ; Cod. *lib.* 1, *tit.* 16 ; 2 Evans's Pothier on Obligations, *Appendix*, 369 *et seq.* ; 6 Dane's Abr. 428 ; 1 Fonbl. 108, note ; 1 Johns. Ch. R. 512.   He also argued, that in the settlements of 1802 and 1823 there were oppression and usury, which entitled the plaintiff to relief in equity.   2 Sch. & Lefr. 661.   In regard to the proper mode of computing interest on the mortgage, he cited 17 Mass. R. 417 ; 1 Johns. Ch. R. 17 ; 8 Mass. R. 455 ; *Ld. Ossulston* v. *Ld. Yarmouth*, 2 Salk. 499 ; 9 Ves. 271 ; 6 Johns. Ch. R. 313.

*Jones*, on the same side, to show that the Court could go behind the settlements of 1802 and 1823, cited 1 Johns. Ch. R. 406, 408, 550 ; 1 Madd. Ch. R. 362 ; 5 Ves. 26, 48 ; 14 Johns. R. 513 ; 2 Johns. Ch. R. 24 ; 7 Mass. R. 119.

*E. Griffin* and *Dewey*, for the defendant, contended among other things, that the demand to render an account being unaccompanied by a tender, the defendant was entitled to a reasonable time to make it out, and under the circumstances of this case the suit was commenced too soon.   If however the defendant is held to account, it should be without costs, since he was guilty of no default.   *Willard* v. *Fiske*, 2 Pick 540 ; *Fay* v. *Valentine*, ibid. 546.

The plaintiff cannot in equity go behind the settlement in 1802.   It was made on a legal consideration, and before the rule of damages on evictions was settled by the courts, either in New York or in this commonwealth, and both parties supposed the measure to be the value of the land at the time or the eviction.   And in this, they were correct ; for the breach was of the covenant of warranty, and the remedy on it as a personal covenant was to be pursued in this commonwealth. 3 Mass. R. 523 ; 4 Mass. R. 108 ; 8 Mass. R. 243 ; 3 Caines's R. 111.   To the point that the plaintiff cannot urge his ignorance of the law, they cited 3 East, 471 ; Dr. & Stud.

79, 152 ; 12 East, 38 ; *Lowry* v. *Bourdieu*, 2 Doug. 471 ; 2 Johns. Ch. R. 51.

The settlement of 1823 was not usurious. Where the original contract is to pay interest annually, and it remains unpaid for several years, and then the parties agree to settle according to the original stipulation, it does not constitute usury. The cases cited, it is apprehended, will be found to want either the original stipulation, or the subsequent assent.

*Jones* replied.

WILDE J. delivered the opinion of the Court. This is a suit in equity, founded on the provisions of *St.* 1821, *c* 85.[1]

The plaintiff alleges in his bill, that before the commencement of the action, he requested the defendant truly to state an account of the sum due on the mortgage mentioned in the bill, which he refused to do. The plaintiff, therefore, prays to be heard in equity, and offers to pay whatever sum may be found due on such hearing ; averring, however, that in fact nothing is due, and that the mortgage was procured by fraud and imposition ; and praying that the defendant may be ordered to discharge the same, and to reconvey the mortgaged premises to the plaintiff. The case has been elaborately argued ; but the opinion of the Court will be stated very briefly, since, as to several of the questions raised by counsel, and those the most difficult, we do not find it necessary to express an opinion.

1. The first question to be determined is, whether there has been such a demand and refusal to render an account as is sufficient to sustain the bill. We think the affirmative of this question is established by satisfactory and convincing evidence. It is proved, that the defendant expressly refused to render an account, except by reference to one which had been stated in 1823, which he said was correct. It appears by the evidence, that this account is in several particulars incorrect, so that there was a refusal to render a true account ; and whether it was caused by mistake or otherwise,

---

[1] See Revised Stat. *c.* 107, § 18, 19; *Putnam* v. *Putnam*, 13 Pick. 129.

Battle
v.
Griffin.

is immateria. If the defendant wished for time to prepare a new account, he should have expressed his wish, or qualified his refusal.[1] The remark made by the defendant about con sulting his son, was not sufficient. Whether that remark was made before or after the refusal, is left doubtful ; nor does it appear that there was any intimation given of an intention, in any event, to render a new account. To allow the effect of a direct refusal to account, to be qualified or done away by evidence thus loose and unsatisfactory, and to turn the plaintiff over to a new action, would be unreasonable.

2. The next, and most important question to be considered, is, whether the plaintiff is entitled to the relief prayed for against the original mortgage, as a contract obtained by fraud and imposition. It has been objected, that we have no jurisdiction over the question ; but we waive the discussion of this objection, because if we have the power to grant relief, we are satisfied that a case has not been made out, which would authorize us to exercise it. There is no proof of any fraud or imposition practised by the defendant, and nothing to show that the settlement of 1802 was not fair and agreeable to equity and good conscience. The plaintiff had conveyed a lot of land to the defendant with warranty, and the defendant no doubt supposed he had received a valid title. He accordingly took possession, and conveyed nearly half the lot to others, who entered and made improvements. Afterwards, he and they were evicted, and the plaintiff thereupon agreed to pay, in discharge of the covenants in his deed, a sum equal to the supposed value of the land at the time of the eviction ; and whatever was the rule of law at the time, we can see nothing in such a settlement contrary to equity. It seems to be founded on the principle of indemnity, and the sum agreed to be paid was no more than it would have cost, to purchase in the title of the prevailing party, as the plaintiff at one time proposed to do. But it is said the plaintiff was only liable by law to repay the consideration money and interest, because he was not seised at the time of the sale, and nothing passed by his deed ; that he acted under a mistake as to his lega.

---

[1] See *Fay* v. *Valentine*, 2 Pick. 546 ; *Whitwood* v. *Kellogg*, 6 Pick. 420.

rights, and that therefore the settlement was not binding This inference, however, I apprehend, cannot be supported. Parties are not to be relieved from their contracts fairly made, with a full knowledge of facts, because they mistake their legal rights or liabilities. But it is not necessary to discuss this point, for it does not appear that the parties were ignorant of the law. The legal presumption is otherwise, for every man is presumed to know the law. This, it is true, is frequently presumption against fact, but in this case there is nothing to control the legal presumption. It is rather confirmed by facts and circumstances. The plaintiff had an opportunity to inform himself of his legal rights and liabilities at the time of the settlement in 1802, which was made with the assistance of intelligent counsel. It was afterwards confirmed by repeated payments, and was finally ratified by a new adjustment in 1823, after a lapse of more than twenty years, and after the rule of law relating to the subject had been long established and promulgated. These facts cannot easily be reconciled with the plaintiff's supposed ignorance of the law. If, therefore, the rule of damages, on which the plaintiff's counsel rely, had been established at the time of the first settlement, the presumption would be, not that the plaintiff was ignorant of it, but that he was induced to accede to the defendant's claims by equitable motives and a sense of natural justice. The fact however is, that no such rule of damages had at that time been adopted by the courts, either in this commonwealth, or in New York. The rule was first adopted in New York in the case of *Staats* v. *Executors of Ten Eyck*, 3 Caines's R. 111, in the year 1805, and afterwards in this State in 1807, in the case of *Marston* v. *Hobbs*, 2 Mass. R. 433.[1] Before these decisions, damages for the breach of the covenant of seisin were assessed by the jury, without any fixed rule to guide or restrain them. This fluctuating course was properly corrected by the introduction of a general rule, fixing a standard of justice for all subsequent cases; but this could not vacate prior contracts, although by the agreement of the parties founded on a different measure of justice. This

Battle
*v*
Griffin.

---

[1] See 2 Mass. R. (Rand's ed.) 440, n. (*a*).

2 *

principle is fully supported by the case of *Lyon* v. *Richmond*, 2 Johns. Ch. R. 60. " To permit," says Chancellor Kent, " a subsequent judicial decision in any one given case, on a point of law, to open or annul every thing that has been done in other cases of the like kind, for years before, under a different understanding of the law, would lead to the most mischievous consequences. Fortunately for the peace and happiness of society, there is no such pernicious precedent to be found."[1]

3. The two sums charged in the bill, as paid by Cowden and Porter, are satisfactorily proved to have been paid on the mortgage, and are to be allowed accordingly.

4. The plaintiff's claim for expenses incurred in litigating the suits commenced by Fisher and Clark, cannot be allowed, nor the notes for 192 dollars and 25 dollars. The expenses were relinquished in the settlement of 1823, and the evidence is not sufficient to show that the notes were given in payment of the mortgage ; and Ebenezer Griffin testifies that they were not.

The master will be directed to ascertain the amount due on the mortgage pursuant to the decision now made, computing simple interest ; and also to make a computation of compound interest.[2]

The question as to the allowance of interest is to be postponed until these computations shall be made.[3]

---

[1] See Story's Comm. Eq. ch. 5, *pp.* 141, 142 *et seq.*, 121, n. 2.

[2] See *Kennon* v. *Dickins*, Cameron & Norw. 357. The taking of compound interest is not usury. *Otis* v. *Lindsey*, 1 Fairfield, 315 ; *Kellogg* v. *Hickok*, 1 Wendell, 521. See *Doe* v *Warren*, 7 Greenl. 48; *Watkinson* v. *Root*, 4 Ohio R. 373; *Breckenridge* v. *Brooks*, 2 Marshall, 340; *Childers* v. *Dean*, 4 Randolph, 406; *Dow* v. *Drew*, 3 N. Hamp. R. 40.

As to the manner of computing interest in settling the amount due on a mortgage, see *Reed* v. *Reed*, 10 Pick. 400, 401; *Porter* v. *King*, 1 Greenl. 297: *Gibson* v. *Crehore*, 5 Pick. 146; 3 Powell on Mortg. (Rand's ed.) 909 *a*, notes.

[3] As to the costs in this case, see *Battle* v. *Griffin*, 5 Pick. 167.